UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL WRIGHT          CIVIL ACTION NO. 19-13529
    Plaintiff

VERSUS                  SECT: F , MAG.: 5

CITY OF HARAHAN, et al.
    Defendants



*********************************************

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

MAY IT PLEASE THE COURT:

The Defendant's Attorney, Deborah A. Villio, filed a motion to dismiss based upon the claims that the compliant filed by Wright fail to state a claim against Defendants Tim Walker, individually, and in his capacity as the Chief of Police for the Harahan Police Department (Walker), Thomas Bronk, , individually, and in his capacity as a Harahan Police Department Officer (Bronk), Manuel Adams, , individually, and in his capacity as a Harahan Police Department Officer (Adams) , and the City of Harahan (City), (hereinafter sometimes referred to as "Harahan Defendants"). Michael Wright ("Wright") respectfully submits this Memorandum in Opposition to the Defendant's Motion to Dismiss.

1

## I. <u>INTRODUCTION</u>

Deborah Villio, Attorney for the Harahan Defendants claims that the initial complaint filed by Wright fails to state specific claims against any of the Harahan Defendants and is based solely on conclusory statements. The factual allegations made in Wright's complaint were, by design, the grounds for the court's jurisdiction, a summary statement of the events during which several claims were made, and the relief sought which are guided under Federal Rules of Civil Procedure Rule 8(a). The claims asserted in Wright's complaint can be substantiated while under adjudication with this court. These claims are made in good faith under the scrutiny of common sense. The Motion to Dismiss which was filed by Ms. Villio on behalf of the Harahan Defendants is suggesting that an unreasonable disclosure of evidence prior to trial be made. Each allegation made was meant to be concise and direct.

## II. <u>DEFENDANT'S ALLEGATIONS AND RESPONSE</u>

Ms. Villio states, "Wright contends he discussed the findings of his investigation with Chief Walker, and that Chief Walker then ordered the investigation be turned over to Lt. Bronk. On or about May17, 2018, Wright alleges that he turned over his investigative material to Lt. Bronk" (Case 2:19-cv-13529-MLCF-MBN Document 6-1, page 2). Have Walker or Bronk denied such easily verifiable information?

Ms. Villio referenced Wright's complaint about his whistleblowing to the FBI when she notes, "Wright does not allege, however, that any of the Harahan

2

Defendants had any knowledge of Wright's alleged meeting with the F.B.I." (Case 2:19-cv-13529-MLCF-MBN Document 6-1, page 2). In Wright's complaint #14 asserts that Leo Savioe ("Savoie") had begun telling other police officers that "the Feds" were investigating in the immediate months following Wright's meeting with Federal Agents. This is a clear indication of knowledge.

During Ms. Villio's Motion to Dismiss she also writes, "Wright alleges that he met with Chief Walker on or about August 14, 2018 to discuss these rumors, as well that Wright had previously heard about missing evidence," as if to suggest that meeting never took place (Case 2:19-cv-13529-MLCF-MBN Document 6-1, page 2). She never notates if her clients are claiming otherwise, and if so, why not do so via sworn affidavit.

Wright was in fact placed on administrative leave, subsequently terminated, and the documents to prove such exist and are accessible by the Harahan Defendants. Ms. Villio also contends that Wright's claim that the Harahan Defendant's investigation was unlawful. This is also proven in the notice of investigation form which was issued to Wright at the start of the internal investigation. Wright was never given a copy of the written complaint; the investigation has Thomas Bronk listed as not only the complainant but also the investigating officer, this is an obvious conflict of interest. Ms. Villio also references that Wright's termination was later reversed and he was reinstated. However, Wright's termination was to be treated as an absolute nullity as required by law under L.R.S. 40:2531(C). Not only did Wright not received state supplemental back

3

pay as agreed, but Walker, or his representative, filed the unlawful investigation that was conducted, into record with the 24th Judicial District Court in direct violation of the Police Officer's Bill of Rights. No such investigation or documentation is supposed to be submitted, if under dispute, until the end of all adjudication, from a hearing with the civil service board through the courts. This form still exists within the 24th JDC records, and has not been removed. Although Wright's termination with Harahan Police Department has been reversed, it was not nullified as agreed. Wright has still suffered the ramification of such acts, had not been compensated as agreed, and the records of his termination still exist as a termination with additional attacks to his credibility on record with the 24th JDC.

Ms. Villio notes, "In cases such as this, where civil rights complaints are lodged against public officials for actions undertaken in the official capacities, the Fifth Circuit has recognized that "liberal notions of notice pleading must give way to immunity doctrines..." (Case 2:19-cv-13529-MLCF-MBN Document 6-1, page 5). L.R.S. 14:143 relative to Malfeasance in Office is when any public official refuses or fails to perform any duty lawfully required of him. Qualified immunity shielding government officials applies when performing discretionary actions. When Walker, Adams, and Bronk refused or failed to perform their duties relative to police corruption involving Gabriel Swenson they were no longer acting under the color of law. Bronk claimed that he conducted a lengthy and thorough investigation into the improper relationship of a former officer but failed to notify the Louisiana

Department of Children and Family Services that nude photos of children existed in evidence relative to this investigation involving Gabriel Swenson.

Ms. Villio writes that, "Wright also alleges that he learned that Captain Adams deleted a completed report regarding an unspecified matter and prepared by an unspecified officer and ordered that the report be rewritten by another unspecified officer." (Case 2:19-cv-13529-MLCF-MBN Document 6-1, page 3). Although Ms. Villio claims that Adams was well within his administrative power to have the report written by another officer, despite the fact that no one else was present for the incident, due to the fact that Wright was out on administrative leave. The report was completed, there was nothing left to be done. Adams printed Wright's completed report, gave it to a different officer to rewrite the exact same report with the exception of the officer who conducted the arrest. L.R.S. 14:132, injuring public records, is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, filed or deposited, by authority of law, in any public office or with any public officer. The report, Item #H-16141-18, was completed and filed within the Automated Records Management and Mapping System (ARMMS). There was no lawful reason or legal cause for the removal of the completed report. This was one of many actions taken by the Harahan Defendants which deprived Wright of his employment and damaged his reputation. There is no qualified immunity in the commission of a crime.

Wright spoke with Walker on a separate occasion on May 17, 2018 and asked him about missing evidence and Walker, at that time, advised he only knew that a pistol was missing from evidence. Yet, Walker never initiated an investigation. Walker was aware that evidence was missing but never initiated an investigation in order to determine its whereabouts. This is also a failure or refusal to perform a duty required of him. Stolen and missing firearms do pose a threat to public safety.

When Walker, Adams, and Bronk began violating state law they were no longer entitled to qualified immunity. They were not performing discretionary actions, they simply violating the law. Then in an effort to prevent discovery of their crimes, they engaged a plan to discredit Wright, whom they knew would never cooperate with their illegal efforts.

Wright's career, retirement, reputation, finances, and family have all suffered as a result of the illegal actions taken by the Harahan Defendants. Wright's reputation was damaged when Walker published an investigation, which Walker knew did not meet the minimum standard during investigation in violation of L.R.S. 40:2531, which contained information that Walker knew to be false, and due to its filing with the 24th JDC. Wright continued employment with a government job was denied him as well as the benefits thereof. Walker also agreed to reverse Wright's termination, his full reinstatement, along with all back pay and emoluments, an agreement he has still not honored, as Wright has not received state supplemental pay and a negative record against Wright still exists in the 24 JDC.

Walker and his administration have continuously used the administrative investigation process to intimidate people into resigning. The Harahan Defendants have investigated people for untruthfulness, thus damaging their credibility and reputation and then offer them the chance to quit before publishing or finalizing their investigation. Harahan Defendants have also participated in investigation which had not been disclosed to the individual officer as required by law, conducted mobile and static surveillance on officers, during the off days, and interrupted their job interview with a different law enforcement agency in order to sabotage their chances of gaining employment. Several current and former officers are willing to testify to such. Wright has personally seen the administration place another officer under investigation for untruthfulness in reference to an incident, despite the fact that the officer never completed a report, never made an arrest, nor testified in court. He was placed under investigation for untruthfulness without cause. Walker and his administration have continuously utilized this tactic in an effort to silence whistleblowers, opponents to his illegal quota policy, or for other types of criticism or defiance.

Regardless of the outcome of Wright's employment status with the Harahan Police Department, his rights were still violated, and he still suffered as a result. His First Amendment Rights to whistleblowing against the department's criminal acts, were when Wright was off duty and in response to the numerous citizens who were victims from this illegal quota. Adams, despite having recused himself from any and all proceedings relative to Wright's Civil Service Board Investigation or

reinstatement hearing with the Harahan Civil Service Board, still asked about Wright speaking with the Media during one such hearing indicating that this was a source of concern for him. Wright's First Amendment Right was violated as Wright did suffer an adverse employment action, he was terminated (not fully reversed), Wright was speaking as a matter of public concern as the Harahan Defendants were in violation of state law relative to L.R.S. 40:2401.1, which cannot be the efficient provision of public services as it is a crime, and Adams asked about this prior to Wright's termination which indicated that the Harahan Defendants were aware that speech and it precipitated the adverse employment action. The speech cannot be considered official duties as ticket quotas are unlawful. Furthermore, these comments were not made at work nor while performing Wright's job.

Bronk unlawfully searched Wright's filing cabinet to which Wright has a reasonable expectation of privacy as he was in possession of the only key top that cabinet, illegally seized his personally owned property without due process and searched the contents therein in direct violation of the Fourth and Fourteenth Amendment. Walker was made aware of this unlawful act when he reviewed the investigation completed by Bronk and took no corrective action.

Walker, Adams, and Bronk colluded in this investigation to intimidate Wright in an effort obstruct the investigation into the former police officer Gabriel Swenson.

Wright has suffered from these actions which were taken by the Harahan Defendants in that Wright's chosen profession was interrupted, has been removed from his access, suffered irreparable damage to his reputation and suffered from the criminal behavior. Police officers not reporting or enforcing public corruption laws, which included a failure to report indecency with children, is criminal and criminal acts in themselves go beyond the possible bounds of decency, especially for people who have taken an oath to uphold the law.

### III. CONCLUSION

Ms. Villio dismissed several easily verifiable facts as allegations and states that Wright's complaint failed to properly state the causes of actions. Wright prays that this Memorandum in Opposition to the Defendant's Motion to Dismiss sufficiently explains more of the specifics of the claims made by Wright and that this Honorable court deny Ms. Villio Motion to Dismiss.

Respectfully Submitted,

Michael Wright
115 Apple Street
Norco, LA 70079
(504) 415-9118
michaelpwright@yahoo.com
JANUARY 21, 2020

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana. I further certify that the attorney for the Harahan Defendants has been served with the foregoing via U.S. Mail at the address listed below and via email on this 21st day of January 2020:


/S/ Deborah A. Villio
3421 No. Causeway Blvd.. Suite 201
Metairie, LA 70002
dvillio@lfvlaw.us


_____
Michael P. Wright