UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MICHAEL WRIGHT                                    CIVIL ACTION

v.                                               NO. 19-13529

CITY OF HARAHAN, ET AL.                          SECTION "F"

ORDER AND REASONS

Before the Court is Chief Tim Walker, Lieutenant Thomas Bronk, Captain Manuel Adams, and the City of Harahan's motion to dismiss Michael Wright's *pro se* complaint. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

**Background**

This civil-rights case raises delicate questions under the First Amendment, the Fourth Amendment, and qualified-immunity doctrine. The parties have not treated the questions with the care their complexity commands. In short——the briefs proved unhelpful. That is unfortunate, because the (alleged) facts are straightforward and serious: A former police officer says the Harahan Police Department fired him for exposing corruption and then conspired with another agency, the Southeast Louisiana Flood Protection Authority-East, to ensure that he never worked in law

enforcement again. He sued *pro se*. The well-pleaded allegations of his complaint, accepted as true and liberally construed in his favor, follow. <u>See</u> <u>Carlucci v. Chapa</u>, 884 F.3d 534, 538 (5th Cir. 2018).

In May 2018, Michael Wright was a sergeant employed by the Harahan Police Department. He learned that another Harahan Police Department officer, Gabriel Swenson, had an affair with a woman named Dana Mattingly. The problem? Swenson was supposed to be investigating Mattingly.

Around the same time, Wright learned that Swenson had stolen a gun and some cash from a Harahan Police Department evidence locker. Armed with this information, Wright opened an investigation of Swenson. It began with a search of Mattingly's cell phone. According to Wright, that search yielded "overwhelming evidence" that Swenson committed "malfeasance in office."

Wright reported his findings to the Harahan Police Department's Chief of Police, Tim Walker. Chief Walker then turned the investigation over to Lieutenant Thomas Bronk, one of Swenson's close friends. But Lieutenant Bronk dropped that investigation in favor of another——an investigation of Wright. Concerned, Wright approached Chief Walker, seeking answers. He received none. Instead, the Department placed him on administrative leave and, a few months later, fired him.

While Wright was out on administrative leave, Lieutenant Bronk "broke[] into" his locked filing cabinet and stole his "personal recording device." The device contained a recording of an interview Wright gave a reporter in an attempt to expose an "illegal ticket quota" Chief Walker had "imposed." The recording was "used against" Wright at his termination hearing.

Around the same time, Wright interviewed for a position with the East Jefferson Levee District Police Department. It went well. His interviewers assured him he was "very qualified" and promised to call him "to schedule the next phase" of hiring. They never called. Wright later learned that Chief Walker and the Chief of the East Jefferson Levee District Police Department, Kerry Najolia, were friends.

A month after the Department fired him, Wright appeared before the Harahan Police and Firefighter's Civil Service Board. He and the Department struck a deal; under it, he would receive "full reinstatement with all back pay." He was not paid.

At some unspecified point, Wright learned that another officer had committed misconduct: Captain Manuel Adams deleted a completed police report and then ordered another officer to ghost-write it for him. This report, too, was "used against" Wright at his termination hearing.

Since his firing, Wright has not had a job in law enforcement. He blames the Department and everyone involved in his investigation. So, he sued all of them: Chief Walker, Lieutenant Bronk, Captain Adams, the City of Harahan, Chief Najolia, and the Flood Protection Authority. He insists that the investigation of him was "illegal" and violated his First and Fourteenth Amendment rights. He adds that Lieutenant Bronk violated his Fourth Amendment rights by searching his locked cabinet. And he says that Chief Walker, Lieutenant Bronk, and Captain Adams retaliated against him for "whistleblowing." He concludes that the City of Harahan is "independently liable" because it failed "to act upon valid complaints made" and negligently hired or retained Chief Walker, Lieutenant Bronk, and Captain Adams.

Now, the City of Harahan, Chief Walker, Lieutenant Bronk, and Captain Adams move to dismiss Wright's *pro se* complaint for failure to state a claim. See FED. R. CIV. P. 12(b)(6). The parties refer to these defendants collectively as the "Harahan Defendants," and the Court does the same.[1]

---

[1] Chief Kerry Najolia and the Southeast Louisiana Flood Protection Authority-East have also moved to dismiss Wright's complaint. See Docket Entry 13. The Court resolves that motion in a separate Order and Reasons.

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). A party may move to dismiss a complaint that fails this requirement. See FED. R. CIV. P. 12(b)(6).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." Thompson v. City of Waco, Tex., 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)). Conclusory allegations are not well pleaded and, consequently, are not accepted as true. See Thompson, 764 F.3d at 502-03 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

To overcome a Rule 12(b)(6) motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). A claim is facially plausible if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

The Court holds "*pro se* plaintiffs to a more lenient standard than lawyers when analyzing complaints, but *pro se* plaintiffs must

still plead factual allegations that raise the right to relief above the speculative level." Chhim v. Univ. of Tex. at Austin, 836 F.3d 467, 469 (5th Cir. 2016) (citing Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002)).

## II.

The Harahan Defendants contend that Wright states no claims against them. Like most *pro se* complaints, Wright's is difficult to follow. But it seems he aims to state four types of claims: (A) municipal-liability claims against the City of Harahan; (B) official-capacity claims against the officers; (C) individual-capacity federal-law claims against the officers; and (D) individual-capacity state-law claims against the officers. The Court considers the claims according to those categories and in that order.

## A.

The Court turns first to the Harahan Defendants' challenge to the sufficiency of Wright's allegations against the City of Harahan. Wright alleges that the City of Harahan is "independently liable" because it "fail[ed] to act upon valid complaints" and negligently hired and retained Lieutenant Bronk, Captain Adams, and Chief Najolia. Liberally construing these allegations, the

Court finds that Wright intends to state a § 1983 municipal-liability claim against the City of Harahan.

Section 1983 creates a cause of action against

> [e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution[.]

42 U.S.C. § 1983.

A municipality, like Harahan, is a "person" suable under § 1983. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978). But a municipality is not vicariously liable for the misconduct of its employees; it is liable only for its own misconduct. Connick v. Thompson, 563 U.S. 51, 60 (2011). So, a plaintiff cannot recover against a municipality under § 1983 unless he proves that "action pursuant to official municipal policy" caused his injury. Monell, 436 U.S. at 691. This is known as a Monell claim. See id.

To state a Monell claim, a plaintiff must plead facts that plausibly establish (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. Ratliff v. Aransas Cty., Tex., __ F.3d __, 2020 WL 219011, at *3 (5th Cir. 2020) (citing Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)).

7

The policy element "includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61 (citation omitted). To survive a motion to dismiss, "a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts.'" Pena v. City of Rio Grande City, 879 F.3d 613, 622 (5th Cir. 2018) (quoting Spiller v. City of Tex. City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997)).

Wright's allegations are deficient. First, he fails to allege specific facts establishing that the City of Harahan had an "official policy or custom." Second, he alleges no facts establishing that the unidentified "official policy or custom" was the "moving force" behind the violation of his constitutional rights. He thus fails to state a claim.

Accordingly, the Court GRANTS the Harahan Defendants' motion to dismiss any Monell claims Wright may be asserting. Because the Harahan Defendants have not shown that amendment would be futile, and Wright has not yet amended, the Court grants him 21 days to amend his complaint to attempt to state a Monell claim. See FED. R. CIV. P. 15(a); Brewster v. Dretke, 587 F.3d 764, 767-68 (5th

Cir. 2009) (*pro se* plaintiffs should generally be offered an opportunity to amend a complaint before it is dismissed).

B.

The Court next considers the Harahan Defendants' challenge to the sufficiency of Wright's allegations against the officers in their official capacities. The officers say these claims should be dismissed as redundant, and the Court agrees.

An official-capacity suit is just "'another way of pleading an action against an entity of which an officer is an agent[.]'" Lewis v. Clarke, 137 S. Ct. 1285, 1291 (2017) (quoting Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)). When a plaintiff sues a government official and the governmental entity, "[t]he official-capacity claims and the claims against the governmental entity essentially merge." Turner v. Houma Mun. Fire & Police Civil Serv. Bd., 229 F.3d 478, 485 (5th Cir. 2006). The official-capacity claims become redundant. See Sanders-Burns v. City of Plano, 594 F.3d 366, 373 (5th Cir. 2010). Because redundant official-capacity claims create only clutter, courts routinely dismiss them. See, e.g., Brown v. City of Houston, Tex., No. H-17-1749, 2019 WL 7037391, at *4 (S.D. Tex. Dec. 20, 2019) (collecting cases); see also Marceaux v. Lafayette City-Parish Consol. Gov't, 614 F. App'x 705, 706 (5th Cir. 2015) (per curiam) (affirming dismissal of

official-capacity claims against municipal officers as redundant of claims against the municipality).

Wright's official-capacity claims against the officers of the Harahan Police Department are redundant of his claims against the City of Harahan. They add nothing to this suit. The Court therefore GRANTS the Harahan Defendants' motion to dismiss any official-capacity claims Wright may be asserting against Chief Walker, Captain Adams, and Lieutenant Bronk, and the Court dismisses those claims *with* prejudice.[2]

C.

The Court next considers Wright's individual-capacity federal-law claims against Chief Walker, Lieutenant Bronk, and Captain Adams. It seems that Wright is trying to state six species of federal claims: (1) a § 1983 claim predicated on Chief Walker's violation of his First Amendment rights; (2) a § 1983 claim predicated on Lieutenant Bronk's violation of his Fourth Amendment rights; (3) a § 1983 claim for Captain Adams' violation of an unidentified constitutional right; (4) a § 1983 conspiracy claim against each officer, (5) a 42 U.S.C. § 1985 conspiracy claim against each officer; and (6) a § 1983 claim predicated on each

---

[2] Obviously, amendment would be futile.

officer's violation of his Fourteenth Amendment right to procedural due process.

In response, the officers invoke qualified immunity and contend that Wright fails to plead facts sufficient to overcome the defense.

Qualified immunity protects government officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Because the focus is on whether the official had "fair notice" that his conduct was unlawful, "reasonableness is judged against the backdrop of the law at the time of the conduct." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam).

A right is not "clearly established" unless precedent places the "'constitutional question beyond debate.'" Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (quoting White v. Pauly, 137 S. Ct. 548, 551 (2017)). Courts may not "'define clearly established law at a high level of generality.'" City and Cty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1775-76 (2015) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). Instead, courts must locate a controlling case that "squarely governs the specific facts at issue." City of Escondido v. Emmons, 139 S. Ct. 500, 503 (2019)

(per curiam). The exception is the "rare 'obvious case'" where a general legal principle makes the unlawfulness of the official's conduct clear despite a lack of precedent addressing similar circumstances. District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018) (citing Brosseau, 543 U.S. at 199).

When a defendant invokes qualified immunity at the pleadings stage, as the officers have here, the plaintiff "bears the burden of pleading facts that demonstrate liability and defeat immunity." Shaw v. Villanueva, 918 F.3d 414, 417 (5th Cir. 2019). A plaintiff meets that burden if he alleges facts establishing "'(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" Id. at 417 (quoting Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013)).

The Court has "discretion to decide which prong of the qualified-immunity analysis to address first." Morgan v. Swanson, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (citing Pearson, 555 U.S. at 236). Because "qualified immunity claims should be addressed separately for each individual defendant," the Court turns first to Chief Walker. Westfall v. Luna, 903 F.3d 534, 549 (5th Cir. 2018) (citation omitted).

1.

Wright appears to allege that Chief Walker violated his First Amendment rights by firing him for engaging in protected speech on two occasions. On the first occasion, Wright allegedly notified higher-ranking officers of Swenson's misconduct. And on the second, Wright spoke to a "news reporter" about an "illegal ticket quota" Chief Walker had "imposed."

The First Amendment, applicable to the states through the Fourteenth Amendment, provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST. amend. I. There is no public-employee exception; the First Amendment "protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). To determine whether a public employee's First Amendment right has been violated, courts "ask a threshold question: Was the employee's speech made pursuant to the employee's duties or as a citizen on a matter of public concern?" Cutler v. Stephen F. Austin State Univ., 767 F.3d 462, 469 (5th Cir. 2014) (citing Garcetti, 547 U.S. at 418). If the employee spoke as a citizen, courts must then "balance the employee's speech interest with the government

employer's interest 'in promoting the efficiency of the public services it performs.'" <u>Cutler</u>, 767 F.3d at 469 (quoting <u>Lane v. Franks</u>, 573 U.S. 228, 231 (2014)).

In determining whether a public employee spoke as part of his job duties or as a citizen, courts consider "'factors such as job descriptions, whether the employee communicated with coworkers or with supervisors, whether the speech resulted from special knowledge gained as an employee, and whether the speech was directed internally or externally.'" <u>Johnson v. Halstead</u>, 916 F.3d 410, 422 (5th Cir. 2019) (quoting <u>Rogers v. City of Yoakum</u>, 660 F. App'x 279, 283 (5th Cir. 2016).

i.

The Court turns first to Wright's intra-department whistleblowing. Wright allegedly reported Swenson's misconduct to Chief Walker and other supervisors, so the speech was "directed internally." <u>Johnson</u>, 916 F.3d at 422. And Wright learned of Swenson's misconduct, at least in part, through the "special knowledge" about fellow officers that he gained as a Harahan Police Department employee. <u>Id</u>. Wright's speech strikes the Court as the sort of up-the-command-chain communication that is routinely denied First Amendment protection. <u>See</u>, <u>e.g.</u>, <u>Davis v. McKinney</u>, 518 F.3d 304, 313 n.3 (5th Cir. 2008) (finding the case literature "unanimous in holding that [an] employee's communications that

relate to his own job function up the chain of command, at least within his own department or division, fall within his official duties and are not entitled to First Amendment protection.").

So, Wright spoke as an employee——not a citizen. Because Wright was not "speaking as a citizen" at the time he reported Swenson's misconduct, Chief Walker cannot have violated Wright's clearly established First Amendment rights. Chief Walker is thus entitled to qualified immunity from any First Amendment claim arising from Wright's intra-department whistleblowing. The Court therefore GRANTS the Harahan Defendants' motion to dismiss this First Amendment retaliation claim, and the Court DISMISSES the claim with prejudice.

ii.

The Court next considers the First Amendment protection accorded Wright's interview with a reporter. Unfortunately, Wright offers few details; he simply says he spoke to a "news reporter" about Chief Walker's "illegal ticket quota." The Harahan Defendants contend——without citation——that the interview is not protected because it happened at work and involved Wright's "special knowledge" of Harahan Police Department ticketing practices.

The Court disagrees. In his complaint, Wright does not say where or when the interview occurred. Nor does he say that speaking

to the press was among his duties as a patrolman. See Garcetti, 547 U.S. at 421-22. True, his speech included information within his "special knowledge" as an employee of the Harahan Police Department. But that is not dispositive. See Charles v. Grief, 522 F.3d 508, 513-14 (5th Cir. 2008). The allegations of Wright's *pro se* complaint, construed liberally and in his favor, show that he spoke as a citizen——not as an employee——when he discussed the Department's "illegal ticket quota" with a "news reporter." And this speech, aimed at exposing official misconduct, relates to a matter of public concern. See Grief, 522 F.3d at 514; Wallace v. County of Comal, 400 F.3d 284, 289 (5th Cir. 2005)("[T]here is perhaps no subset of matters of public concern more important than bringing official misconduct to light."). Because Wright was "speaking as a citizen" on a matter of public concern, the interview constitutes protected speech. Johnson, 916 F.3d at 422.

But that is not the end of the inquiry. To state a First Amendment retaliation claim, Wright must allege facts establishing that he "suffered an adverse employment action" *because of* "'speech or activity related to a matter of public concern.'" Maldonado v. Rodriguez, 932 F.3d 388, 391 (5th Cir. 2019) (quoting Aucoin v. Haney, 306 F.3d 268, 274 (5th Cir. 2002)). He fails to do so.

Wright alleges no facts linking his termination to the interview. He thus fails to allege that he suffered an adverse

employment action *because of* his protected speech. Because he fails to allege the causation element, he fails to allege facts establishing that Chief Walker violated his clearly established First Amendment rights. Having failed to allege the violation of a clearly established right, Wright cannot overcome Chief Walker's qualified-immunity defense.

Accordingly, the Court GRANTS the Harahan Defendants' motion to dismiss this First Amendment retaliation claim. Because it is not clear that amendment would be futile, and Wright has not yet amended his *pro se* complaint, the Court grants him 21 days to amend his complaint to attempt to state a claim sufficient to defeat Chief Walker's qualified-immunity defense. See FED. R. CIV. P. 15(a); Brewster, 587 F.3d at 767-68.

2.

The Court next considers Wright's Fourth Amendment claims against Lieutenant Bronk. Wright appears to allege that Lieutenant Bronk violated his Fourth Amendment rights by stealing his "personal" recorder from his locked filing cabinet, searching the files on the recorder, and then "us[ing] those files against" him.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. It appears that Wright intends to state § 1983 claims predicated on

Lieutenant Bronk's (a) search of his locked filing cabinet and (b) seizure of his recorder. The Court turns first to the search claim.

i.

Wright appears to allege that Lieutenant Bronk violated his Fourth Amendment rights by searching his locked file cabinet.

To state a § 1983 claim for damage caused by a search, a plaintiff must allege facts establishing a "'constitutionally protected reasonable expectation of privacy'" in the place searched. California v. Ciraolo, 476 U.S. 207, 211 (1986) (quoting Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)).

Public employees "do not lose Fourth Amendment rights merely because they work for the government instead of a private employer." O'Connor v. Ortega, 480 U.S. 709, 717 (1987) (plurality op.). For example, a public employee may have a reasonable expectation of privacy in his file cabinets. Id. at 717-18. That expectation depends on (a) office practices and procedures; (b) legitimate regulation; and (c) the cabinet's contents. Id.

Wright says Lieutenant Bronk stole his "personal recording device" from his "locked shift file cabinet" for no valid reason. These allegations, accepted as true and liberally construed in Wright's favor, show that Wright had a reasonable expectation of privacy in the locked filed cabinet. See O'Connor, 480 U.S. at

717. Lieutenant Bronk's actions thus constituted a "search" to which the Fourth Amendment applies. See, e.g., Horton v. Goose Creek Ind. Sch. Dist., 690 F.2d 470, 476 (5th Cir. 1982). That search is "judged by the standard of reasonableness under all the circumstances." O'Connor, 480 U.S. at 725-26.[3]

To determine the reasonableness of a search under this standard, the Court considers whether: (1) the search was "justified at its inception"; and (2) the search, "as actually conducted[,] was reasonably related in scope to the circumstances [that] justified the interference in the first place." Id. at 726 (citation omitted).

A search is "justified at its inception" when "there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct, or that the search is necessary for a non[-]investigatory work-related purpose such as to retrieve a needed file." Id. at 726. A search is permissible in scope "when 'the measures adopted are

_____

[3] The Court recognizes that Justice Scalia, concurring in the judgment, endorsed another approach. See O'Connor, 480 U.S. at 731. But the differences between his and the plurality's approaches are of no moment here: under either approach, the allegations of Wright's complaint establish that Wright had a reasonable expectation of privacy in his locked file cabinet. See, e.g., City of Ontario, Cal. v. Quon, 560 U.S. 746, 757 (2010) (distinguishing the approaches of Justice Scalia and the O'Connor plurality but concluding that both produced the same result).

reasonably related to the objectives of the search and not excessively intrusive in light of . . . the nature of the misconduct.'" O'Connor, 480 U.S. at 726 (quoting New Jersey v. T.L.O., 469 U.S. 325, 342 (1985) (brackets omitted)).

The allegations of Wright's *pro se* complaint, taken as true and liberally construed in his favor, show that Lieutenant Bronk's search of the locked file cabinet was "unreasonable under all the circumstances." O'Connor, 480 U.S. at 725-26.

For one, the search was not "justified in its inception." Id. The search was allegedly suspicionless: Lieutenant Bronk simply "broke[] into" Wright's locked cabinet, for no reason, while Wright was out of the office on administrative leave. Because the search was suspicionless, it was necessarily not supported by any suspicion, let alone "reasonable grounds for suspecting" that it would yield evidence that Wright had committed work-related misconduct. Id.

Nor was the search reasonable in scope. Id. After "breaking into" Wright's locked cabinet, Lieutenant Bronk "took possession" of Wright's "personal recording device." Lieutenant Bronk could not have mistaken it for a Department-issued recorder: It did not resemble a Department-issued recorder, and the Department does not even issue recorders to patrolman like Wright. Rummaging through a co-worker's locked cabinet to explore the contents of his

personal recorder is "excessively intrusive," considering the absence of suspicion supporting the search. Id. (quoting T.L.O., 469 U.S. at 342).

Accordingly, because Lieutenant Bronk's suspicionless search of Wright's locked office cabinet was neither justified in its inception nor reasonable in scope, the search violated Wright's Fourth Amendment rights.[4] See O'Connor, 480 U.S. at 725-26. Having resolved the first qualified-immunity prong in Wright's favor, the Court turns to the second⸺whether Wright's Fourth Amendment rights were "clearly established" in fall 2018, at the time of Lieutenant Bronk's alleged misconduct.

To resolve the clearly-established prong, the Court "must frame the constitutional question with specificity and granularity." Morrow v. Meachum, 917 F.3d 870, 874-75 (5th Cir. 2019). It is not enough, for example, that the Fourth Amendment prohibits "unreasonable" searches. See id. at 875 (citing Saucier v. Katz, 533 U.S. 194, 202 (2001)). The "dispositive question is whether the violative nature of *particular* conduct is clearly established." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015).

---

[4] For the same reasons, the Court concludes that the search would not be "regarded as reasonable and normal in the private employer context" and would fail the test articulated by Justice Scalia's O'Connor concurrence. See O'Connor, 480 U.S. at 732.

Here, the specific constitutional question is: Does an officer violate the Fourth Amendment rights of a fellow officer when he, lacking suspicion, "breaks[] into" the officer's locked filing cabinet, retrieves what is unmistakably that officer's personal property, and explores the contents of that property? The answer is obvious.

"Obvious cases" are ones where, "in the light of pre-existing law," the unlawfulness of the officer's actions is "apparent." White, 137 S. Ct. at 552. In such cases, "the unlawfulness of the officer's conduct is sufficiently clear even though . . . precedent does not address similar circumstances." Wesby, 138 S. Ct. at 590 (citing Brosseau, 543 U.S. at 199). This is such a case.

It has long been clear that a public employee, like Wright, may have a reasonable expectation of privacy in his file cabinets. See O'Connor, 480 U.S. at 719. It has been equally clear for equally long that a search of a public employee's file cabinets must be based on (a) reasonable grounds for suspecting the search will yield evidence of work-related misconduct or (b) a non-investigatory work-related purpose. Id. at 726. The allegations of Wright's *pro se* complaint, taken as true and liberally construed in his favor, show that neither basis supported the search.

Because every reasonable officer would understand that "break[ing] into" a fellow officer's locked filing cabinet and

exploring the contents of that officer's personal recording device violates the law, Lieutenant Bronk is not entitled——at this pleading stage——to qualified immunity from Wright's Fourth Amendment search claim.[5] See Morgan, 659 F.3d at 371 (citation omitted). The Court therefore DENIES the Harahan Defendants' motion to dismiss this claim on qualified-immunity grounds. Having resolved the challenge to the Fourth Amendment search claim, the Court turns to the Fourth Amendment seizure claim.

ii.

Next, Wright appears to allege a Fourth Amendment seizure claim against Lieutenant Bronk. Wright alleges that Lieutenant Bronk violated his Fourth Amendment rights by "t[aking] possession" of his "personal recording device" from his locked filing cabinet. To determine whether Wright has stated a Fourth Amendment seizure claim against Lieutenant Bronk, the Court first decides if Wright adequately alleges a "seizure" to which the Fourth Amendment applies. He has.

---

[5] Deciding whether an official is entitled to qualified immunity for a Fourth Amendment violation is a doctrinally difficult enterprise on even superior submissions. On sub-par submissions, like the papers the Harahan Defendants submit, the enterprise becomes formidable. The Court emphasizes the Harahan Defendants' failure to meaningfully analyze any Fourth Amendment issue.

A "seizure" of property "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" Soldal v. Cook Cty., Ill., 506 U.S. 56, 61 (1992) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)).

The allegations of Wright's complaint, accepted as true and liberally construed in his favor, establish that Lieutenant Bronk "meaningful[ly] interfere[d]" with Wright's "possessory interest" in his "personal recording device" when Lieutenant Bronk "took possession" of that device. Soldal, 506 U.S. at 61. Because Wright adequately alleges a Fourth Amendment seizure, the Court next considers whether his allegations establish that it was an "unreasonable" and therefore unconstitutional one.

Generally, a seizure of personal property is "unreasonable" unless it is "accomplished pursuant to a judicial warrant issued by a neutral magistrate after finding probable cause." Illinois v. McArthur, 531 U.S. 326, 330 (2001) (citation omitted). But there are exceptions. See id. at 330. "[S]pecial law enforcement needs, diminished expectations of privacy, minimum intrusions, or the like" may make a warrantless seizure "reasonable." Id.

The seizure described in Wright's complaint was not supported by a warrant, exigent circumstances, or a special need. It was therefore unreasonable. Because Wright alleges facts establishing that Lieutenant Bronk unreasonably seized his "personal recording

device," Wright alleges a Fourth Amendment violation. Having resolved the first qualified-immunity prong in Wright's favor, the Court turns to the second——whether Wright's Fourth Amendment rights were "clearly established" in fall 2018, at the time of Lieutenant Bronk's alleged misconduct. They were.

The right to be free from warrantless seizures of personal property, absent a special need, was clearly established with obvious clarity in fall 2018. See McArthur, 531 U.S. at 330; United States v. Place, 462 U.S. 696, 701 (1983)). So, the clearly-established prong is met.

Because the allegations of Wright's complaint——accepted as true and liberally construed in his favor——establish that Lieutenant Bronk violated his clearly established Fourth Amendment rights by seizing his "personal recording device," Wright is not entitled to qualified immunity from Wright's Fourth Amendment seizure claim at this pleading stage. The Court therefore DENIES the Harahan Defendants' motion to dismiss this claim on qualified-immunity grounds.

3.

The Court next considers the claims against Captain Adams, a minor player in the drama described in Wright's complaint. The only specific allegations against Captain Adams are that: (1) he "deleted a completed police report"; (2) he directed the report to

"be rewritten by another officer as if it [were] his own"; and (3) he "used" the report "against" Wright "in his termination."

Shorn of context, these allegations mean little. The significance of the ghostwritten police report is unclear: Did it contain false information? Or truthful information that was unlawfully obtained? Did it give the Department grounds for firing Wright? We do not know. Because Wright's complaint lacks specific factual allegations answering these questions and supplying relevant context, Wright fails to plausibly allege that Captain Adams violated any clearly established right. Having failed to allege the violation of a clearly established right, Wright cannot overcome Captain Adams' qualified-immunity defense. See Shaw, 918 F.3d at 417.

Accordingly, the Court GRANTS the Harahan Defendants' motion to dismiss with prejudice any claims Wright may be asserting against Captain Adams.

5.

Having addressed the federal-law claims Wright may be asserting against the officers individually, the Court considers the federal-law claims he may be asserting against them collectively: (1) a § 1983 conspiracy claim; (2) a § 1985 conspiracy claim; and (3) a § 1983 claim predicated on violations of Wright's Fourteenth Amendment right to procedural due process.

i.

First, Wright appears to allege that Chief Walker, Lieutenant Bronk, and Captain Adams are liable under § 1983 for conspiring against him. To state a § 1983 conspiracy claim, Wright "must not only allege facts that 'establish (1) the existence of a conspiracy involving state action, but also (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.'" Shaw, 918 F.3d at 419 (quoting Pfannstiel v. City of Marion, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by* Martin v. Thomas, 973 F.2d 449 (5th Cir. 1992)).

Wright alleges that Chief Walker, Lieutenant Bronk, and Captain Adams "participated in a conspiracy to deprive [him] of property, relative to income[.]" That is it. He alleges no specific facts to support the legal conclusion that the officers conspired against him. He thus fails to state a plausible § 1983 conspiracy claim against any officer. See Twombly, 550 U.S. at 555; Shaw, 918 F.3d at 419.

Accordingly, the Court GRANTS the Harahan Defendants' motion to dismiss any § 1983 conspiracy claims Wright may be asserting. Because the Harahan Defendants have not shown that amendment would be futile, however, the Court grants Wright 21 days to amend his complaint to attempt to state plausible § 1983 conspiracy claims. See FED. R. CIV. P. 15(a); Brewster, 587 F.3d 764 at 767-68.

Because Wright invokes 42 U.S.C. § 1985 and uses the word "conspiracy," he may be trying to state a § 1985 conspiracy claim against the officers.

Section 1985 creates a cause of action against anyone who conspires to deprive another of "equal protection of the laws" or "equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). A conspiracy is not actionable under § 1985(3) unless it involves race-based animus. Lockett v. New Orleans City, 607 F.3d 992, 1002 (5th Cir. 2010) (citing Hilliard v. Ferguson, 30 F.3d 649, 652-53 (5th Cir. 1994)).

To state a § 1985(3) conspiracy claim,[6] Wright must allege that the officers "(1) conspired; (2) for the purpose of depriving, either directly or indirectly, [him] of equal protection of the laws, or of equal privileges and immunities under the laws; and

---

[6] Wright's complaint, liberally construed, does not reflect an intent to state claims under § 1985(1) or § 1985(2). To the extent that Wright intends to state claims under those provisions, he fails to do so. Subsection (1) creates a cause of action against anyone who conspires to (a) prevent a federal officer from discharging his duties or (b) injure a federal officer because of his lawful discharge of his duties. 42 U.S.C. § 1985(1). Wright has not alleged that he was a federal officer; so, any § 1985(1) claim fails. Prevailing on a subsection (2) claim requires proof of race- or class-based animus, Bryant v. Military Dep't of Miss., 597 F.3d 678, 687 (5th Cir. 2010), and Wright has alleged neither. He thus fails to state any § 1985(2) claims.

(3) took or caused action in furtherance of the conspiracy; which (4) injured [him] or deprived him of his rights or privileges as a United States citizen." Shaw, 918 F.3d at 419.

Wright's § 1985(3) conspiracy claim fails for the same reason his § 1983 conspiracy claim failed: He alleges no specific facts to support the conclusion that the officers conspired against him. His claim fails for the additional reason that he alleges no facts establishing that racial animus played any role. See Cantú v. Moody, 933 F.3d 414, 419 (5th Cir. 2019) (quoting Deubert v. Gulf Fed. Sav. Bank, 820 F.2d 754, 757 (5th Cir. 1987) ("[I]n this circuit . . . the only conspiracies actionable under § 1985(3) are those motivated by racial animus.")).

Accordingly, the Court GRANTS the Harahan Defendants' motion to dismiss any § 1985 conspiracy claims Wright may be asserting, and the Court DISMISSES those claims without prejudice. Because the Harahan Defendants have not shown that amendment would be futile, and Wright has not yet amended his *pro se* complaint, the Court grants him 21 days to amend his complaint to attempt to state plausible § 1985 conspiracy claims. See FED. R. CIV. P. 15(a); Brewster, 587 F.3d 764 at 767-68.

### iii.

Wright may be asserting § 1983 claims predicated on the officers' violation of his Fourteenth Amendment right to

procedural due process. Indeed, Wright invokes the Fourteenth Amendment and alleges that the officers conspired to deprive him "of property relative to income . . . without due process[.]"

The Due Process Clause of the Fourteenth Amendment forbids any State from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV, § 1. This provision requires that government give an "opportunity to be heard 'at a meaningful time and in a meaningful manner'" before depriving any person of "life, liberty, or property." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

When an employee's "good name, reputation, honor or integrity is at stake due to an action by the government, he is entitled to notice and an opportunity to be heard." Sims v. City of Madisonville, 894 F.3d 632, 642 (5th Cir. 2018) (citing Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971)). But an employee's constitutionally protected liberty interest "'is implicated only if [he] is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'" Sims, 894 F.3d at 642 (quoting White v. Thomas, 660 F.2d 680, 684 (5th Cir. 1981)). The proper defendant in a deprivation-of-liberty suit is the government employer—not a government employee or official.

*Sims*, 894 F.3d at 642 (citing <u>Harris v. City of Balch Springs</u>, 9 F. Supp. 3d 690, 700 (N.D. Tex. 2014)).

Wright appears to allege that he was deprived of a constitutionally protected liberty interest when he was fired from his job as an officer of the Harahan Police Department. But he alleges no specific facts showing that the City of Harahan or the Harahan Police Department denied him "notice and an opportunity to be heard" before his firing. <u>Sims</u>, 894 F.3d at 642. Nor does he allege, as he must, specific facts establishing that his firing created "a false and defamatory impression about him." <u>Sims</u>, 894 F.3d at 642. So, he fails to state a plausible § 1983 procedural-due-process claim against the City of Harahan. And his claims against the officers fail as a matter of law because "[a] deprivation of liberty claim lies against the government employer, not a government employee or official." <u>Sims</u>, 894 F.3d at 642 (citing <u>Harris</u>, 9 F. Supp. 3d at 700).

Accordingly, the Court GRANTS the Harahan Defendants' motion to dismiss any procedural-due-process claims Wright may be asserting. Because any such claims against the officers are deficient as a matter of law, amendment would be futile; those claims are DISMISSED with prejudice. The Harahan Defendants have not shown futility with respect to the § 1983 procedural-due-process claims Wright may be asserting against the City of Harahan,

and Wright has not yet amended his *pro se* complaint. The Court therefore grants him 21 days to amend his complaint to attempt to state a plausible procedural-due-process claim against the City of Harahan. See FED. R. CIV. P. 15(a); Brewster, 587 F.3d 764 at 767-68. Having resolved the challenges to Wright's federal-law individual-capacity claims, the Court turns to his state-law individual-capacity claims.

D.

Wright appears to assert Louisiana-law claims for conspiracy, defamation, and intentional infliction of emotional distress against the officers in their individual capacities.

1.

Under Louisiana law, "[c]ivil conspiracy is not itself an actionable tort." Doe v. Mckesson, 945 F.3d 818, 826 (5th Cir. 2019) (citing Ross v. Conoco, Inc., 828 So. 2d 546, 552 (La. 2002)). It merely "assigns liability arising from the existence of an underlying unlawful act." Mckesson, 945 F.3d at 826 (citing Ross, 828 So. 2d at 552). So, to impose liability under a civil conspiracy theory, a plaintiff must plead four elements: "(1) an agreement existed with one or more persons to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in plaintiff's injury; and (4) there was an agreement as to the intended outcome or result." Mckesson, 945 F.3d at 826

(citing <u>Crutcher-Tufts Res., Inc. v. Tufts</u>, 992 So. 2d 1091, 1094 (La. Ct. App. 2008)).

Wright fails to state a Louisiana-law conspiracy claim against any defendant because he alleges no specific facts establishing that any defendant agreed to commit an illegal or tortious act. He alleges only that Chief Walker, Captain Adams, and Lieutenant Bronk "participated in a conspiracy" to deprive him of property in violation of the Fourteenth Amendment. That will not do. <u>See</u> Fed. R. Civ. P. 8(a). For even *pro se* plaintiffs cannot swap legal conclusions for specific factual allegations. <u>See</u> <u>Chhim</u>, 836 F.3d at 469.

Accordingly, the Court GRANTS the Harahan Defendants' motion to dismiss any Louisiana-law conspiracy claims Wright may be asserting. Because the Harahan Defendants have not shown that amendment would be futile, and Wright has not yet amended his *pro se* complaint, the Court grants him 21 days to amend his complaint to attempt to state plausible Louisiana-law conspiracy claims. <u>See</u> Fed. R. Civ. P. 15(a); <u>Brewster</u>, 587 F.3d 764 at 767-68.

### 2.

Under Louisiana law, a claim for intentional infliction of emotional distress has three elements: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the

defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991). Conduct is not actionable unless it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. at 1209.

Wright fails to allege facts sufficient to establish any element of this tort as to any defendant. He alleges only that "[t]he actions of" Chief Walker, Lieutenant Bronk, and Captain Adams" are "acts of . . . intentional infliction of emotional distress." That is obviously inadequate. See Iqbal, 556 U.S. at 678.

Accordingly, the Court GRANTS the Harahan Defendants' motion to dismiss any intentional infliction of emotional distress claims Wright may be asserting. Because the Harahan Defendants have not shown that amendment would be futile, and Wright has not yet amended his *pro se* complaint, the Court grants him 21 days to amend his complaint to attempt to state plausible intentional infliction of emotional distress claims. See FED. R. CIV. P. 15(a); Brewster, 587 F.3d 764 at 767-68.

Under Louisiana law, "defamation is a tort involving the invasion of a person's interest in his or her reputation and good name." Kennedy v. Sheriff of East Baton Rouge, 2005-1418, p. 5 (La. 7/10/06); 935 So. 2d 669, 674. It consists of four elements: "(1) a false and defamatory[7] statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Costello v. Hardy, 2003-1146, p. 12 (La. 1/21/04); 864 So. 2d 129, 139 (citation omitted).

Wright fails to state a defamation claim because he fails to plausibly allege that any defendant made a false and defamatory statement about him. He again offers only a conclusion: that "[t]he actions of the defendants . . . are also acts of slander[.]" That will not do; as the Court has explained, Wright must allege specific facts to support the legal conclusions that litter his complaint. See Iqbal, 556 U.S. at 678. Because he fails to do so, the Court GRANTS the Harahan Defendants' motion to dismiss Wright's defamation claim. The Harahan Defendants have not shown that

---

[7] A statement is defamatory if "it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associated or dealing with the person, or otherwise expose the person to contempt or ridicule." Kennedy, 935 So. 2d at 674 (citing Costello, 864 So. 2d at 140).

amendment would be futile; so, the Court grants Wright 21 days to amend his complaint to attempt to state plausible defamation claims. <u>See</u> Fed. R. Civ. P. 15(a); <u>Brewster</u>, 587 F.3d 764 at 767-68.


IV.


Accordingly, IT IS ORDERED: that Chief Tim Walker, Lieutenant Thomas Bronk, Captain Manuel Adams, and the City of Harahan's motion to dismiss Michael Wright's *pro se* complaint is GRANTED IN PART and DENIED IN PART, as stated above. Wright is granted 21 days to amend his complaint to attempt to state the specific plausible claims indicated herein. If he fails to timely amend, the Court will dismiss the deficiently pleaded portions of his complaint *with* prejudice and without further notice.


New Orleans, Louisiana, February 19, 2020


_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE