UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MICHAEL WRIGHT                                CIVIL ACTION

v.                                            NO. 19-13529

CITY OF HARAHAN, ET AL.                       SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court is Chief Kerry Najolia and the Southeast Louisiana Flood Protection Authority-East's Rule 12(b)(6) motion to dismiss Michael Wright's *pro se* complaint.[1] For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

**Background**

This civil-rights litigation arises from Michael Wright's claim that the Harahan Police Department fired him for exposing corruption and then conspired with the Flood Protection Authority to ensure that he never worked in law enforcement again. The well-pleaded allegations of his *pro se* complaint——taken as true and

---

[1] Chief Tim Walker, Captain Manuel Adams, Lieutenant Thomas Bronk, and the City of Harahan have also moved to dismiss Wright's complaint. <u>See</u> Docket Entry 6. The Court resolves that motion in a separate Order and Reasons.

liberally construed in his favor——follow. <u>See</u> <u>Carlucci v. Chapa</u>, 884 F.3d 534, 538 (5th Cir. 2018).

In May 2018, Michael Wright was a sergeant employed by the Harahan Police Department. He learned that another Harahan Police Department officer, Gabriel Swenson, had an affair with a woman named Dana Mattingly. The problem? Swenson was supposed to be investigating Mattingly.

Around the same time, Wright learned that Swenson had stolen a gun and some cash from a Harahan Police Department evidence locker. Armed with this information, Wright opened an investigation of Swenson. It began with a search of Mattingly's cell phone. According to Wright, that search yielded "overwhelming evidence" that Swenson committed "malfeasance in office."

Wright reported his findings to the Harahan Police Department Chief of Police, Tim Walker. Chief Walker then turned the investigation over to Lieutenant Thomas Bronk, one of Swenson's close friends. But Lieutenant Bronk dropped this investigation in favor of another——an investigation of Wright. Concerned, Wright approached Chief Walker, seeking answers. He received none. Instead, the Department placed him on administrative leave and, three months later, fired him.

While Wright was out on administrative leave, Lieutenant Bronk "broke[] into" his locked filing cabinet and stole his "personal recording device." The device contained a recording of an interview Wright gave a reporter in an attempt to expose an "illegal ticket quota" Chief Walker had "imposed." The recording was "used against" Wright at his termination hearing.

Around the same time, Wright interviewed for a position with the East Jefferson Levee District Police Department. It went well. His interviewers assured him he was "very qualified" and promised to call him "to schedule the next phase" of hiring. They never called. Wright later learned that Chief Walker and the Chief of the East Jefferson Levee District Police Department, Kerry Najolia, were friends. And even later, Wright learned that he was "passed over for employment" in favor of "other officers with significantly less or no experience[.]"

In December 2018, about a month after the Department fired him, Wright appeared before the Harahan Police and Firefighter's Civil Service Board. He and the Department struck a deal; under it, he would receive "full reinstatement with all back pay." He was never paid.

At some unspecified point, Wright learned that another officer had committed misconduct: Captain Manuel Adams deleted a completed police report and then ordered another officer to ghost-

write it for him. This report, too, was "used against" Wright at his termination hearing.

Since his firing, Wright has not had a job in law enforcement. He blames the City of Harahan and everyone involved in his investigation. So, he sued all of them: Chief Walker, Lieutenant Bronk, Captain Adams, the City of Harahan, Chief Najolia, and the Flood Protection Authority. He says that Chief Najolia conspired with Chief Walker to deprive him of property without due process of law, in violation of his Fourteenth Amendment rights. And the Flood Protection Authority is "independently liable," he says, because it negligently hired and retained Chief Najolia.

Now, Chief Najolia and the Flood Protection Authority move to dismiss for failure to state a claim. <u>See</u> Fed. R. Civ. P. 12(b)(6).

I.

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). A party may move to dismiss a complaint that fails this requirement. <u>See</u> FED. R. CIV. P. 12(b)(6).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." <u>Thompson v. City of Waco, Tex.</u>,

764 F.3d 500, 502 (5th Cir. 2014) (citing <u>Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys</u>, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)). Conclusory allegations are not well pleaded and, consequently, are not accepted as true. <u>See</u> <u>Thompson</u>, 764 F.3d at 502-03 (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).

To overcome a Rule 12(b)(6) motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Gonzalez v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009) (quoting <u>Iqbal</u>, 556 U.S. at 678). A claim is facially plausible if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.

The Court holds "*pro se* plaintiffs to a more lenient standard than lawyers when analyzing complaints, but *pro se* plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." <u>Chhim v. Univ. of Tex. at Austin</u>, 836 F.3d 467, 469 (5th Cir. 2016) (citing <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 378 (5th Cir. 2002)).

II.

Chief Najolia and the Flood Protection Authority contend that Wright fails to state claims against them. Although Wright's *pro se* complaint is difficult to follow, it appears that he intends to state 42 U.S.C. § 1983 and Louisiana-law conspiracy claims against Chief Najolia, a negligence claim against the Flood Protection Authority, and punitive-damages claims against both defendants. The Court turns first to the claims against Chief Najolia.

A.

The allegations of Wright's *pro se* complaint——accepted as true and liberally construed in his favor——reflect an intent to sue Chief Najolia for (1) Louisiana-law conspiracy and (2) violations of 42 U.S.C. § 1983. The Court considers the § 1983 claims first.

1.

Wright says that Chief Najolia is liable in his official and individual capacities under § 1983 because he conspired with Chief Walker and others to deprive him of property, in violation of the Fourteenth Amendment. Chief Najolia rejoins that he enjoys qualified immunity from Wright's individual-capacity claims.

Qualified immunity protects government officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Because the focus is on whether the official had "fair notice" that his conduct was unlawful, "reasonableness is judged against the backdrop of the law at the time of the conduct." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam).

A right is not "clearly established" unless precedent places the "'constitutional question beyond debate.'" Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (quoting White v. Pauly, 137 S. Ct. 548, 551 (2017)). Courts may not "'define clearly established law at a high level of generality.'" City and Cnty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1775-76 (2015) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). Instead, courts must locate a controlling case that "squarely governs the specific facts at issue." City of Escondido v. Emmons, 139 S. Ct. 500, 503 (2019) (per curiam).

When a defendant invokes qualified immunity at the pleadings stage, as Chief Najolia has here, the plaintiff "bears the burden of pleading facts that demonstrate liability and defeat immunity." Shaw v. Villanueva, 918 F.3d 414, 417 (5th Cir. 2019). A plaintiff

meets that burden if he alleges facts establishing "'(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" Id. at 417 (quoting Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013)). The Court has "discretion to decide which prong of the qualified-immunity analysis to address first." Morgan v. Swanson, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (citing Pearson, 555 U.S. at 236).

Wright fails to allege facts sufficient to satisfy either prong. The allegations of his *pro se* complaint, accepted as true and liberally construed in his favor, establish two benign facts: (1) Chief Najolia was friends with Chief Walker; and (2) Chief Najolia "ignored" Wright's inquiries about a position with the East Jefferson Levee District Police Department. That conduct does not constitute a constitutional or statutory violation.[2] Because Wright fails to allege that Chief Najolia violated a clearly established right, Wright has not overcome Chief Najolia's qualified-immunity defense. See Shaw, 918 F.3d at 417.

---

[2] The Court notes Wright's mere conclusory allegations that Chief Najolia "participated in a conspiracy," "acted in collusion," and took "action . . . in violation of his" constitutional rights. See Iqbal, 556 U.S. at 681; Chhim, 836 F.3d at 469.

Accordingly, the Court GRANTS the motion to dismiss any individual-capacity § 1983 claims Wright may be asserting against Chief Najolia, and the Court DISMISSES those claims without prejudice. Because it is not clear that amendment would be futile, and Wright has not yet amended his *pro se* complaint, the Court grants him 21 days to amend his complaint to attempt to state a claim. See FED. R. CIV. P. 15(a); Brewster v. Dretke, 587 F.3d 764, 767-68 (5th Cir. 2009) (*pro se* plaintiffs should generally be offered an opportunity to amend a complaint before it is dismissed.).

Wright also sues Chief Najolia in his official capacity as Chief of the Orleans Levee District Police Department and Chief of the East Jefferson Levee District Police Department.

Official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690 n.55 (1978)). Because the entity is the real party in interest, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Graham, 473 U.S. at 166.

Wright's official-capacity claims against Chief Najolia are treated as claims against Chief Najolia's employer, the Flood Protection Authority. See LA. REV. STAT. § 38:330.7(B) (authorizing

the Flood Protection Authority to employ a superintendent of police to "supervise the police security personnel of all levee districts within its territorial jurisdiction").

When a plaintiff sues a government official and the governmental entity, as Wright has here, "[t]he official-capacity claims and the claims against the governmental entity essentially merge." Turner v. Houma Mun. Fire & Police Civil Serv. Bd., 229 F.3d 478, 485 (5th Cir. 2006). The official-capacity claims become redundant. See Sanders-Burns v. City of Plano, 594 F.3d 366, 373 (5th Cir. 2010). Because redundant official-capacity claims create only clutter, courts routinely dismiss them. See, e.g., Brown v. City of Houston, Tex., No. H-17-1749, 2019 WL 7037391, at *4 (S.D. Tex. Dec. 20, 2019) (collecting cases); see also Marceaux v. Lafayette City-Parish Consol. Gov't, 614 F. App'x 705, 706 (5th Cir. 2015) (per curiam) (affirming dismissal of official-capacity claims against municipal officers as redundant of claims against the municipality).

Wright's official-capacity claims against Chief Najolia are redundant of his claims against the Flood Protection Authority. The Court therefore GRANTS the motion to dismiss any § 1983

official-capacity claims Wright may be asserting against Chief Najolia, and the Court DISMISSES those claims *with* prejudice.[3]

2.

Next, Wright appears to assert a Louisiana-law civil conspiracy claim against Chief Najolia. Wright alleges that Chief Najolia and Chief Walker were "personal friends" who conspired to prevent him "from performing his duties as a police officer and to deprive him of future employment."

Under Louisiana law, "[c]ivil conspiracy is not itself an actionable tort." Doe v. Mckesson, 945 F.3d 818, 826 (5th Cir. 2019) (citing Ross v. Conoco, Inc., 828 So. 2d 546, 552 (La. 2002)). It merely "assigns liability arising from the existence of an underlying unlawful act." Mckesson, 945 F.3d at 826 (citing Ross, 828 So. 2d at 552). So, to impose liability under a civil conspiracy theory, Wright must plead four elements: "(1) an agreement existed with one or more persons to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in plaintiff's injury; and (4) there was an agreement as to the intended outcome or result." Mckesson, 945 F.3d at 826 (citing Crutcher-Tufts Res., Inc. v. Tufts, 992 So. 2d 1091, 1094 (La. Ct. App. 2008)).

---

[3] Obviously, amendment would be futile.

Wright fails to state a Louisiana-law conspiracy claim because he alleges no specific facts establishing that any defendant agreed to commit an illegal or tortious act. He alleges only that Chief Walker, Chief Najolia, Captain Adams, and Lieutenant Bronk "participated in a conspiracy" to deprive him of property in violation of the Fourteenth Amendment. That will not do: Even *pro se* plaintiffs cannot swap legal conclusions for specific factual allegations. See Chhim, 836 F.3d at 469.

Accordingly, the Court GRANTS the motion to dismiss any Louisiana-law conspiracy claims Wright may be asserting, and the Court DISMISSES the claims without prejudice. Because Chief Najolia and the Flood Protection Authority have not shown that amendment would be futile, and Wright has not amended his *pro se* complaint, the Court grants him 21 days to amend his complaint to attempt to state plausible Louisiana-law conspiracy claims. See FED. R. CIV. P. 15(a); Brewster, 587 F.3d at 767-68.

Having concluded that Wright fails to state any claims against Chief Najolia, the Court considers Wright's claims against the Flood Protection Authority.

B.

The allegations of Wright's *pro se* complaint——accepted as true and liberally construed in his favor——reflect an intent to sue the Flood Protection Authority for negligently hiring and retaining Chief Najolia. The Flood Protection Authority contends that Monell applies and that Wright has not alleged a claim that meets its requirements.

1.

A local government unit, like the Flood Protection Authority, is a "person" suable under § 1983. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978). But a local government unit is not vicariously liable for the misconduct of its employees; it is liable only for its own misconduct. Connick v. Thompson, 563 U.S. 51, 60 (2011). So, a plaintiff cannot recover against a local government unit under § 1983 unless he proves that "action pursuant to official policy" caused his injury. Monell, 436 U.S. at 691. This is known as a Monell claim. See id.

To state a Monell claim, a plaintiff must plead facts that plausibly establish (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. Ratliff v. Aransas Cty., Tex., __ F.3d __,

2020 WL 219011, at *3 (5th Cir. 2020) (citing <u>Piotrowski v. City</u> <u>of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001)).

The policy element "includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." <u>Connick</u>, 563 U.S. at 61 (citation omitted). To survive a motion to dismiss, "a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts.'" <u>Pena v. City of Rio Grande City</u>, 879 F.3d 613, 622 (5th Cir. 2018) (quoting <u>Spiller v. City of Tex. City, Police Dep't</u>, 130 F.3d 162, 167 (5th Cir. 1997)).

Wright's allegations are deficient in several respects. He fails to allege specific facts establishing that (1) the Flood Protection Authority had an "official policy or custom"; or (2) the unidentified "official policy or custom" was the "moving force" behind the violation of his constitutional rights. <u>See</u> <u>Monell</u>, 436 U.S. at 691. He thus fails to state a claim.

Accordingly, the Court GRANTS the motion to dismiss any negligence claims Wright may be asserting against the Flood Protection Authority, and the Court DISMISSES the claims without prejudice. Because Chief Najolia and the Flood Protection Authority have not shown that amendment would be futile, and Wright

has not amended his *pro se* complaint, the Court grants him 21 days to amend his complaint to attempt to state plausible claims. See Fed. R. Civ. P. 15(a); Brewster, 587 F.3d at 767-68.

C.

The allegations of Wright's *pro se* complaint, accepted as true and liberally construed in his favor, reflect an intent to recover punitive damages.

Chief Najolia and the Flood Protection Authority contend that Wright cannot recover punitive damages against the Flood Protection Authority because it is a "governmental entity." And Wright cannot recover punitive damages against Chief Najolia in his official capacity, they add, because any punitive-damages claim against him must be treated as a punitive-damages claim against the Flood Protection Authority.

1.

Punitive damages are not available in § 1983 suits "against a governmental entity for constitutional violations." McMillen v. New Caney Ind. Sch. Dist., 939 F.3d 640, 647 n.1 (5th Cir. 2019) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 268 (1981)). The Flood Protection Authority is a "governmental entity" because it is a "political subdivision" under Louisiana law. See La. Rev. Stat. § 38:330.1 (establishing the Flood Protection

Authority as a "levee district"); LA. REV. STAT. § 38:281(6) (defining "levee district" as a "political subdivision"); LA. REV. STAT. § 13:5102(B) (defining "political subdivision" as any parish, municipality, special district, school board, sheriff "or other public or governmental body of any kind which is not a state agency"). Because the Flood Protection Authority is a "governmental entity," Wright cannot recover punitive damages against it under § 1983. McMillen, 939 F.3d at 647 n.1.

Accordingly, the Court GRANTS the motion to dismiss any § 1983 punitive-damages claims Wright may be asserting against the Flood Protection Authority and Chief Najolia in his official capacity, and the Court DISMISSES the claims *with* prejudice. Because these claims are deficient as a matter of law, amendment would be futile.[4]

---

[4] Wright also fails to state Louisiana-law punitive damages claims. Under Louisiana law, "punitive or other penalty damages are not allowed unless expressly authorized by statute." Simmons v. Cornerstone Investments, LLC, 2018-0735, p. 9 (La. 5/8/19); 282 So. 3d 199, 205 (citation omitted). Wright does not allege a statutory basis for recovering punitive damages under Louisiana law.

D.

Moving from claims to defenses, the Court next considers a prescription (or statute-of-limitations) defense. Chief Najolia and the Flood Protection Authority contend that the allegations of Wright's complaint show that his claims have prescribed. Because the prescription analysis differs depending on the nature of the claims, the Court considers Wright's § 1983 claims before turning to his Louisiana-law claims.

1.

Wright appears to allege assorted § 1983 claims against Chief Najolia and the Flood Protection Authority. A court may dismiss such claims on statute-of-limitations grounds when "it is evident from the plaintiff's pleadings that the action is [time-]barred, and the pleadings fail to raise some basis for tolling." Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003).

Because there is no federal statute of limitations for § 1983 claims, the Court borrows from the "general personal injury limitations period" of the forum, Louisiana. Bargher v. White, 928 F.3d 439, 444 (5th Cir. 2019) (citing Wallace v. Kato, 549 U.S. 384, 387 (2007)). Civil Code Article 3492 sets Louisiana's "general personal injury limitations period"; so, its one-year liberative

prescriptive period applies. Bargher, 928 F.3d at 444; LA. CIV. CODE art. 3492.

Although Louisiana's prescriptive period applies, its accrual doctrines do not. See Wallace v. Kato, 549 U.S. 384, 388 (2007). That is because "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." Id. at 388. Under federal law, a § 1983 claim accrues "when the plaintiff has a complete and present cause of action." McDonough v. Smith, 139 S. Ct. 2149, 2155 (2019) (citation omitted).

The Court cannot say when Wright had "a complete and present cause of action" against Chief Najolia or the Flood Protection Authority. McDonough, 139 S. Ct. at 2155. Wright does not identify when any of the alleged misconduct occurred; the only dates he provides are:

- May 11, 2018 – Wright was employed by the Harahan Police Department and held the rank of sergeant;

- May 22, 2018 – Lieutenant Bronk questions Officer Michael Dow about Wright's investigation of Lieutenant Bronk;

- August 2018 – Wright learns that Chief Walker and Lieutenant Bronk have "target[ted]" him;

- August 14, 2018 – Wright confronts Chief Walker about Lieutenant Bronk's investigation;

- August 23, 2018 – Wright is placed on administrative leave;

- November 7, 2018 – Wright is fired; and

- December 19, 2018 – Wright appears before the Civil
  Service Board and "ma[kes] a deal for reinstatement."

These allegations do not reveal when Wright first had "a complete
and present cause of action" against Chief Najolia or the Flood
Protection Authority. McDonough, 139 S. Ct. at 2155. So, it is
not "evident from the pleadings that the action is time-barred."
Taylor, 744 F.3d at 946. The Court therefore DENIES the motion to
dismiss Wright's § 1983 claims on prescription grounds.

2.

Wright appears to allege Louisiana-law conspiracy and
negligence claims against Chief Najolia and the Flood Protection
Authority. These Louisiana-law claims are governed by Louisiana
prescription and accrual principles. See Barfield v. Madison Cty.,
Miss., 212 F.3d 269, 271-72 (5th Cir. 2000); Meyers v. Moody, 693
F.2d 1196, 1206 (5th Cir. 1982).

Under Louisiana law, prescription statutes are "strictly
construed" against prescription. Bailey v. Khoury, 2004-0620, p.
9 (La. 1/20/05); 891 So. 2d 1268, 1275. The party raising
prescription has the burden of proving it, except when "the
plaintiff's claim is barred on its face." Id. at 1275.

Wright's conspiracy and negligence claims are governed by
Louisiana's one-year prescriptive period for delictual claims. See

LA. CIV. CODE art. 3492. That period begins to run "from the day injury or damage is sustained." LA. CIV. CODE art. 3492. Damage is "sustained" under Civil Code Article 3492 "only when it has manifested itself with sufficient certainty to support accrual of a cause of action." Bailey, 891 So. 2d at 1276 (citing Cole v. Celotex Corp., 620 So. 2d 1154, 1156 (La. 1993)).

The allegations of Wright's complaint do not reveal when Wright's damages "manifested . . . with sufficient certainty to support accrual of a cause of action" against Chief Najolia or the Flood Protection Authority. Bailey, 891 So. 2d at 1276. So, Wright's Louisiana-law claims are not prescribed on their face, and the burden of proving prescription remains with the defendants. Id. Because the defendants have not met that burden, the Court DENIES their motion to dismiss Wright's Louisiana-law claims as prescribed.

III.

Accordingly, IT IS ORDERED: that Chief Najolia and the Flood Protection Authority's Rule 12(b)(6) motion to dismiss is GRANTED IN PART and DENIED IN PART as follows: any individual-capacity § 1983 claims Wright may be asserting against Chief Najolia are DISMISSED without prejudice; any official-capacity § 1983 claims Wright may be asserting against Chief Najolia are DISMISSED with prejudice; any civil conspiracy claims Wright may be asserting against Chief Najolia are DISMISSED without prejudice; any negligence claims Wright may be asserting against the Flood Protection Authority are DISMISSED without prejudice; and any punitive-damages claims Wright may be asserting against Chief Najolia (in his official capacity) and the Flood Protection Authority are DISMISSED with prejudice. Wright is GRANTED 21 days to amend his complaint to attempt to state plausible claims. If Wright fails to timely amend, the Court will dismiss his complaint *with* prejudice and without further notice.

New Orleans, Louisiana, February 19, 2020

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE